UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GREGORY DEAN TINNELL, CARLOS TITUS, AND CARLA WALLACE § § §    *Plaintiffs*, § v. § § THE CAMPBELL'S SOUP COMPANY, § § *Defendant*. § § | CIVIL ACTION NO. 2:17-cv-533 |

## ORIGINAL COMPLAINT

1. Plaintiffs GREGORY DEAN TINNELL, CARLOS TITUS, AND CARLA WALLACE (collectively "Plaintiffs"), by and through their attorneys, bring this action for damages and other legal and equitable relief from the violation of the laws proscribing discrimination based on race and color, stating the following as Plaintiffs' claims against The Campbell's Soup Company ("Defendant").

## INTRODUCTION

2. This is an action brought by Plaintiffs seeking damages from Defendant for acts of discrimination based on race and color. Defendant's acts of discrimination are in violation of Title VII and 42 U.S.C. § 2000e *et. seq.* of the Civil Rights Act of 1964, as amended and 42 U.S.C § 2000e *et. seq.*, the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq.*; and the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.*; and Title II of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*.

3. Defendant is the world's largest producer of soup and other related products with annual sales of approximately $8 billon. Defendant owns and operates a manufacturing plant located in Paris, Texas.

4. Plaintiffs are formerly employed by the Defendant. Additionally, Plaintiffs all worked in Defendant's facility located in Paris, Texas.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. § 1981a *et seq.*, as amended. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**6.** Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

7. Defendant is a publicly traded New Jersey corporation with its principal place of business located at 1 Campbell Place, Camden, New Jersey 08103. Upon information and belief, Defendant employs more than ten thousand (10,000) persons and has operations in five (5) U.S. states, in addition to operating processing plants in several other countries.

8. Plaintiff GREGORY DEAN TINNELL is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American male citizen of the United States of America and is a resident of the State of Texas.

9. Plaintiff CARLOS TITUS is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American male citizen of the United States of America and is a resident of the State of Texas.

10. Plaintiff CARLA WALLACE is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

11. Plaintiffs who have herein alleged claims pursuant to Title VII have timely filed complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC").

12. Plaintiffs who have herein alleged claims pursuant to Title VII have received their Notice of Right to Sue letters from the EEOC prior to the filing of this Complaint.

## STATEMENT OF FACTS

### I.  Facts Common to All Plaintiffs

13. Defendant owns and operates a production facility located in Paris, Texas.

14. Plaintiffs were all employed at Defendant's Paris, Texas facility.

15. Defendant's maintained and implemented a demerit-based system for policy violations.

16. Upon accumulating more than fifty (50) demerits, an employee was subject to termination.

17. Black employees were disproportionally issued more demerits than White employees.

18. As a result of the demerit system, Black employees were disproportionally terminated in comparison with White employees.

19. Black employees were disproportionally denied the opportunity to work overtime.

20. Defendant maintained a "last chance policy."

21. The "last chance" policy allowed terminated employees to return to work on a probationary basis.

22. White employees were rehired through the "last chance" policy substantially more than Black employees.

## II.     Facts Specific to Individual Plaintiffs

### Gregory Dean Tinnell

23. Plaintiff Gregory Dean Tinnell ("Tinnell") was employed by Defendant in the Paris, Texas facility from in or around September 2013 until in or around November 2014.

24. Plaintiff Tinnell was first employed in Defendant's warehouse and was then temporarily assigned to the waste field department.

25. Plaintiff Tinnell's White supervisor, Brian, frequently taunted him with threats of termination.

26. In or around May 2014, Plaintiff Tinnell reported Brian's behavior to Human Resources and to the Union.

27. Upon information and belief, no corrective action was taken in regards to Brian's treatment of Plaintiff Tinnell.

28. Shortly thereafter, Plaintiff Tinnell applied for a temporary position in the waste field department in order to escape Brian.

29. There was a total of four employees in the waste field department.

30. Plaintiff Tinnell was only the only Black employee in the waste field department.

31. Upon information and belief, White employees received training for the waste field department.

32. Defendant's training included how to operate the computer systems and how to operate the machines.

33. Unlike the White employees in the department, Plaintiff Tinnell did not receive any training.

34. Plaintiff Tinnell requested permission to work overtime hours in the waste field department.

35. Plaintiff Tinnell was routinely denied permission to work overtime hours by his White supervisor, Mr. Potter.

36. Upon information and belief, Plaintiff Tinnell's White co-workers were permitted to work overtime hours one to two days per week.

37. Plaintiff Tinnell filed a complaint with the union about the lack of training and overtime.

38. Shortly thereafter, Plaintiff Tinnell's temporary assignment in the waste field ended and he returned to the warehouse.

39. In or around November 2014, Plaintiff requested permission to leave work two hours early to attend his son's football game.

40. Plaintiff Tinnell's regular supervisor was not there that day so he was forced to ask Brian for permission to leave early.

41. Brian verbally granted Plaintiff Tinnell's request to leave early.

42. However, upon returning to work, Plaintiff Tinnell was suspended for two (2) weeks without pay and then terminated after Brian falsely reported that Plaintiff Tinnell failed to request permission to leave work early.

### Carlos Titus

43. Plaintiff Carlos Titus ("Titus") was employed by Defendant in the Paris, Texas facility in or around July 26, 2006 to in or around August 2015.

44. Plaintiff Titus was employed as a filler operator.

45. Throughout Plaintiff Titus' employment with Defendant, White employees were routinely offered overtime before Black employees.

46. Upon information and belief, Plaintiff Titus was only permitted to work overtime hours when White employees were unable to do so. This resulted in a loss of income for Plaintiff Titus.

47. In 2013, Plaintiff Titus began working for Hispanic supervisor, Fernando.

48. Fernando routinely and openly harassed Black filler operators by standing over them and repeatedly questioning their work.

49. Fernando would also routinely go through Plaintiff Titus' locker box to see whether he had a cell phone in an effort to issue him demerits.

50. In or around July 2014, Plaintiff Titus, along with other Black employees, complained to Defendant's Human Resources department about Fernando's frequent harassment.

51. Upon information and belief, no corrective action was taken.

6

52. Fernando also repeatedly accused Plaintiff Titus of making errors at work – despite his nine (9) years of experience - in an effort to issue demerits to Plaintiff Titus.

53. In or around June 2014, Plaintiff Titus was falsely accused of entering incorrect soup weights by Fernando in another effort to issue Plaintiff Titus demerits.

54. If Plaintiff Titus actually entered the incorrect soup weight, the machine would have turned red to notify him.

55. The machine did not turn red because Plaintiff Titus never entered the incorrect weight.

56. Despite that, Fernando issued Plaintiff Titus twenty-five (25) demerits.

57. In or around June 2014, Plaintiff Titus notified the label operator that the codes on the jars were smeared.

58. Upon information and belief, notifying the label operator is Defendant's proper procedure when there are smeared codes on the jars.

59. As a result, Fernando wrote up Plaintiff Titus for "smeared code" and issued him 25 demerits.

60. It is not normal procedure for the Company to issue demerits for smeared code, as it is outside the filler operator's control if the code is smeared by a broken glass jar on the line.

61. In or around August 2014, Fernando again falsely accused Plaintiff Titus of labeling containers with the wrong weight.

62. When Plaintiff Titus requested the paperwork to show that the containers were incorrectly labeled, Fernando refused to provide it.

63. Plaintiff Titus was issued twenty-five (25) demerits for the abovementioned incident.

64. As a result, Plaintiff Titus was terminated after accumulating more than fifty (50) demerits.

65. Following his termination, Plaintiff Titus requested rehiring through the "last chance" policy.

66. Defendant refused to rehire Plaintiff Titus through their "last chance" policy.

67. Plaintiff sought help to be rehired through his union.

68. The union set up a meeting between Plaintiff Titus and Defendant.

69. During that meeting, Defendant told Plaintiff Titus that they could not rehire him because issuing labels with the wrong weight on containers was equal to falsifying documents.

70. During that meeting, Plaintiff maintained that he did not issue labels with the wrong weight and that it was Fernando who falsified documents.

71. Plaintiff provided a witness statement to support that Fernando falsified the documents in an effort to have Plaintiff Titus terminated.

72. Defendant ignored Plaintiff Titus' argument and did not rehire him through their "last chance" policy.

73. The union took no further action following the meeting.

74. Defendant rehired James Harrison ("Mr. Harrison"), a White employee, through their "last chance" policy.

75. Upon information and belief, Mr. Harrison had accumulated more than one hundred (100) total demerits.

76. Shortly after Plaintiff Titus was terminated, Defendant terminated a Filipino female employee, Henrakit (last name unknown) for issuing labeling containers with the wrong weights.

77. Defendant rehired Henrakit through their "last chance" policy.

## Carla Wallace

78. Plaintiff Carla Wallace ("Wallace") was employed by Defendant in the Pairs, Texas facility from in or around 2008 until in or around January 2015.

79. Plaintiff Wallace was employed by Defendant as a Tech 2.

80. Plaintiff Wallace began working in the Defendant's Ready to Eat department in 2013.

81. The Ready to Eat department was comprised of fifty (50) employees.

82. In December 2014, Plaintiff Wallace went to her union steward to report that her White co-worker with less seniority continued to receive more overtime than Plaintiff Wallace.

83. In January 2015, Plaintiff Wallace received twenty (20) demerits for allegedly putting too much starch in the machine.

84. The union steward later told Plaintiff Wallace that a White employee, Kristen, told supervisor Chance Bankhead that she had seen Plaintiff Wallace put in the starch despite the fact that Kristen was on break during the time of the alleged incident.

85. Four days later, Plaintiff Wallace had a doctor's appointment.

86. Plaintiff Wallace received permission from her White team leader, Kevin Barry, that she could attend said doctor's appointment.

87. Plaintiff Wallace informed Defendant's medical department that she had a doctor's appointment.

88. Plaintiff Wallace missed approximately forty-five minutes of work due to her doctor's appointment.

89. Plaintiff Wallace returned to work with a note from her doctor.

90. Following the doctor's appointment, Plaintiff was called into a meeting with Defendant.

91. Said meeting was comprised of Plaintiff Wallace, a White Human Resources representative, a White union steward, and the White plant manager, Chance Bankhead.

92. At said meeting, Plaintiff Wallace was told that the team leader denied giving her permission to go to her doctor and Plaintiff Wallace would receive thirty-five (35) demerits.

93. Plaintiff Wallace was then terminated as a result of having too many demerits.

94. Upon information and belief, the team leader Plaintiff Wallace received permission from to attend the doctor's appointment was the son-in-law of the union steward at the meeting.

95. Plaintiff Wallace requested reemployment through the Defendant's "last chance" policy.

96. Defendant denied Plaintiff Wallace's request for reemployment through their "last chance" policy despite being a long-term employee.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Termination)

97. Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

98. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* as Defendant has engaged in the practice of discrimination against Plaintiffs named herein who have asserted such claims.

99. Defendant intentionally discriminated against Plaintiff because of his race, color and/or sex in violation of Title VII by unlawfully terminating them.

100. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*
### (Termination)

101. Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

102. Plaintiffs were subjected to discrimination on the basis of race and/or color by Defendant.

103. The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Defendant has engaged in the practice of discrimination against Plaintiffs named herein who have asserted such claims.

104. Defendant intentionally discriminated against Plaintiffs because of race and/or color in violation of Section 1981 by unlawfully terminating them.

105. Plaintiff's requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq.*
### (Termination)

106. Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

107. Plaintiffs were subjected to discrimination on the basis of his race, color and/or sex by Defendant.

108. Defendant intentionally discriminated against Plaintiffs because of race, color and/or sex in violation of the Tex. Lab. Code § 21.001 *et seq.* by unlawfully terminating them.

109. The conduct alleged herein violates TLC § 21.001 *et seq.* as Defendant has engaged in the practice of discrimination against Plaintiffs named herein who have asserted such claims.

110. Plaintiffs' requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, pray for the following relief:

- That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of the Plaintiffs under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*; and Title II of the Texas Labor Code, Tex. Lab. Code 21.001 *et seq.*, prohibiting discrimination in employment;

- That judgment be entered in favor of Plaintiffs against Defendant for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiffs;

- That the Plaintiffs be awarded compensatory damages where available;

- That the Plaintiffs be awarded punitive damages;

- That the Plaintiffs be awarded pre and post judgment interest;

- That the Court award Plaintiffs attorneys' fees and costs associated with this matter, including but not limited to expert fees' and costs;

- That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law;

Plaintiffs seek injunctive relief, and including but not limited to:

a. Training on the subject of employment discrimination for all of Defendant's employees;

b. Diversity training for all managers conducted by reputable outside vendors;

c. Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

d. Active monitoring of the work areas to ensure compliance with discrimination policies;

e. All promotional opportunities posted on all employee bulletin boards; and

f. Monitoring by the Court of a Federal Agency to ensure that Defendant comply with all injunctive relief; and

Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Respectfully submitted,

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@dpelaw.com
Vasilios Manthos
Texas State Bar No. 24100887
**DINOVO PRICE ELLWANGER LLP**
7000 North MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627

*Of Counsel:*

James A. Vagnini
N.Y. State Bar No. 2958130
jvagnini@vkvlawyers.com
Monica Hincken
N.Y. State Bar No. 5351804
mhincken@vkvlawyers.com

**VALLI KANE & VAGNINI LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516) 706-0248

*Counsel for Plaintiffs*